# IN THE COURT OF APPEALS OF IOWA

No. 23-1806
Filed January 24, 2024

**IN THE INTEREST OF N.C. and E.C.,**
**Minor Children,**

**A.D., Mother,**
    Appellant.

_____

    Appeal from the Iowa District Court for Scott County, Cheryl Traum, District Associate Judge.

    A mother appeals the termination of her parental rights. **AFFIRMED.**

    Patricia Rolfstad, Davenport, for appellant mother.

    Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

    Jean Capdevila, Davenport, attorney and guardian ad litem for minor children.

    Considered by Bower, C.J., and Schumacher and Badding, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to two children, born in 2013 and 2017.[1] She claims termination is not in the best interests of the children and the juvenile court should have established a guardianship in lieu of termination.

## I.    *Background Facts and Proceedings*

This family came to the attention of the department of health and human services (department) in 2020, due to concerns of methamphetamine use by the parents and domestic abuse between them.[2] The children were adjudicated in need of assistance and placed in the care of the maternal grandparents. When concerns were raised about the maternal grandmother's drug use, the children were moved to the care of the paternal grandmother, and later, to the care of a maternal aunt. When all these placements posed concerns, the children were eventually placed with a "suitable other," Trisha, the sister of the paternal grandfather's fiancée. The children continue to reside with Trisha.

Over the next few years, concerns persisted relating to domestic violence, substance abuse and mental health, parenting, homelessness, criminal activity, and the mother allowing the children to be around a registered sex offender. Services were offered to address these concerns. The mother tested positive for substances, including methamphetamines, on several occasions, and she was a no-show or noncompliant with other tests. The mother completed substance-

---

[1] The father's parental rights were also terminated. He does not appeal.
[2] Specifically, "the father knocked the mother unconscious while the children were present," and he was "charged in at least five domestic violence incidents."

abuse evaluations, which recommended outpatient treatment, but "[s]he was not consistently attending treatment." In October 2021, she entered treatment but was unsuccessfully discharged six days later.

By spring 2022, the mother appeared to be making progress. She had "re-engaged in substance abuse treatment," "reported talking to a domestic violence advocate," and led the department to believe "she was separating herself from the father" (who was not participating in services or visiting the children and "continued to be violent"). The court allowed the parents additional time to work towards reunification with the children. The permanency hearing was held over three days, which allowed the parents "an additional eight months to show their commitment to the children." The mother's progress stagnated; she continued to use drugs, did not appear for drug screens, failed to participate in treatment, and did not make consistent contact with the children. The State initiated termination-of-parental-rights proceedings in March 2023.

The termination hearing was continued from July and eventually held in October 2023. The mother was present at the hearing, but she did not testify. The father was in jail. The caseworker testified the mother had not completed any of the initial case plan requirements. Significantly, the mother had not participated in domestic-violence therapy, had not complied with drug screens or completed substance-abuse treatment, and had no contact with the children since July. The mother "concede[d] she struggles with substance use" and asked the court to consider establishing a guardianship with Trisha in lieu of termination. The caseworker resisted that option, reporting the children were "very aware of what's

going on," and they were "angry," "sad," and "tired of the back-and-forth." The department and guardian ad litem recommended termination of parental rights.

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (e), (f), and (*l*) (2023). She appeals.

## II. Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our paramount concern in termination proceedings is the best interests of the children. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). We give weight to, but are not bound by, the juvenile court's fact findings. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

## III. Analysis

In our review, we use a three-step analysis: first, determine if a ground for termination exists under section 232.116 paragraph (1); next, apply the best-interest framework from paragraph (2); and last, consider if any exceptions from paragraph (3) apply to preclude termination. *Id.* at 472–73.

*A. Grounds for Termination.* Because the mother does not contest the existence of the grounds for termination, we need not discuss this step. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

*B. Best Interests of the Children.* Our statutory best-interests framework considers "the child[ren]'s safety, . . . the best placement for furthering the long-term nurturing and growth of the child[ren], and . . . the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a

parent will learn to be a parent and be able to provide a stable home for the child."

*In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted).

The children were adjudicated in need of assistance and removed from the parents' custody over two years ago. Since then, the mother has not consistently engaged in services or made any significant progress. In considering whether termination is in the children's best interests, "we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). On this issue, the court found:

> The children have been court ordered out of parental care since July of 2021. [E.C.] has spent a good portion of her life outside the care of her parents. . . . The parents have been given ample time and services to demonstrate their ability to parent these children, yet they are still unable to parent these children. The children's best interests are served by termination. The parents have been unable to make sufficient progress throughout the life of the case even after the court granted additional time to work toward reunification. The parents have been unable to address mental health, substance abuse, domestic violence and criminal activity issues that have plagued them during this case and before this case was opened. The parents' inability to progress shows they are unlikely to ever become capable of providing a safe and stable home for these children.

We agree with the court's finding that "[f]ailure to terminate parental rights would be contrary to the welfare of the children, as the termination of parental rights is the only reasonable means to establish permanency for them." Termination is in the best interests of the children.

*C. Exceptions and Guardianship.* Once the State has proven grounds for termination, the burden shifts to the parent to prove a permissive exception under section 232.116(3). *A.S.*, 906 N.W.2d at 475–76. The mother claims the

department "failed to show by clear and convincing evidence why a guardianship would not be appropriate in this case, as an exception to termination of parental rights, given the age of the children and the long-term bond between the girls and their mother."

While the children and the mother do have a bond, to apply the exception under paragraph (c) "requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.,* 956 N.W.2d 162, 169 (quoting Iowa Code § 232.116(3)(c)). For the reasons set forth above, the mother has not established termination of her rights will be detrimental to the children.

Insofar as we interpret the mother's argument as a claim permanency should have been achieved through a guardianship with Trisha, guardianship is not the preferred method of permanency, particularly when children are young. *See A.S.,* 906 N.W.2d at 477 ("[A] guardianship is not a legally preferable alternative to termination." (citation omitted)). On this issue, the guardian ad litem opined:

> [N.C.] is very matter of fact about staying with Trisha permanently if she cannot return to her mother's care now. . . . [E.C.] is enthusiastic about being adopted and enlarging her family. She has all the new relationships figured out. [E.C.] is completely embracing the idea of having more family. Both girls seek Trisha's attention and approval. . . .
> The girls have literally aged years while this case has been open. They are developmentally in a very different place than when I first met them. [N.C.] had a strong bond with her mother, but [the mother] has damaged [N.C.]'s trust by being unreliable. Several months ago, when [the mother] was making some progress apart from [the father], I was willing to consider a guardianship. The moment passed and [the mother] showed that even without [the father] dragging her down, she doesn't have the ability to stabilize for

her girls. Even as an absent parent, she hurts them by not showing up to visit or calling them.

The girls are together in an adoptive home that can provide for them and love them. Trisha is able and willing to raise them, even though she has raised a generation of children already. Despite the love the girls have for their parents, they clearly have formed a bond with Trisha as well. . . .

And as the caseworker put it:

So with guardianship and the chance of that possibly being turned over, that doesn't give them any stability. It says, Okay this is where you're going to stay for a year, but you may still have to go back to an unstable environment. You may still have to go back to parents who can't show sobriety, can't show stability.

We affirm the denial of the mother's request for a guardianship, and we find a permissive exception should not be applied to preclude termination.

*D. Reasonable Efforts.* The mother also challenges the "unreasonable" visit schedule set by the department, claiming the department "ask[ed] the parents to make an impossible choice" between having visits together despite domestic-violence concerns or not seeing the children. Reasonable efforts "covers both the efforts to prevent and eliminate the need for removal." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "The reasonable efforts concept would broadly include a visitation arrangement designed to facilitate reunification while protecting the child[ren] from the harm responsible for the removal." *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (citation omitted).

The mother may not challenge reasonable efforts for the first time on appeal or during the termination hearing, as she did here. *See In re E.H.,* No. 21-0467, 2021 WL 2709486, at *2 (Iowa Ct. App. June 30, 2021). Rather, the mother was required to alert the juvenile court of any perceived deficiency in services "at the removal, when the case permanency plan [wa]s entered, or at later review

hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). Because the mother failed to do so, her reasonable-efforts challenge is waived. *In re A.S.*, No. 23-1755, 2024 WL 111266, at *3 (Iowa Ct. App. Jan. 10, 2024).

We affirm the termination of the mother's parental rights.

**AFFIRMED.**